

276 Fifth Avenue, Suite 404
New York, New York 10001
D: 646-794-1581 | O: 212-396-4288
F: 212-396-2617 | swoller@mmps.com

1981 Marcus Avenue, Suite E117
Lake Success, New York 11042

April 13, 2018

**Via ECF**
Hon. Nelson S. Román
United States District Court
Southern District of New York
300 Quarropas Street, Courtroom 218
White Plains, New York 10601

   Re: **SHG of Illinois, LLC at al. v. Snap Advances, LLC et al., No. 7:17-cv-08320**

Dear Judge Román:

  This Firm represents Defendant Peak Source LLC ("Peak Source") in the above-referenced action.[1] Pursuant to Rule 3(A)(iii) of Your Honor's Individual Practices in Civil Cases, Peak Source respectfully submits this pre-motion letter setting forth the basis of its proposed motion to (a) dismiss under Fed. R. Civ. P. 12(b), or transfer under 28 U.S.C. § 1404, based on the forum-selection clause contained in the Purchase and Sale Agreement for Future Receivables (the "Agreement") from which Plaintiffs' claims arise; and, (b) dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

  As set forth in Defendant Snap Advances, LLC ("Snap")'s pre-motion letter (ECF Doc. 13), the forum-selection clause in the Agreement between Snap and Plaintiff clearly requires that all claims be brought in a state or federal court located in Utah. When assessing the enforceability of a forum selection clause, courts conduct a four-part analysis:

> First, 'whether the clause was reasonably communicated to the party resisting enforcement'; second, 'whether the clause was mandatory or permissive; third, 'whether the claims and parties involved in the suit are subject to the forum selection clause'; and, fourth, 'whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Seneca Family of Agencies*, 255 F. Supp. 3d 480, 487 (S.D.N.Y. 2017) (quoting *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007) (alteration omitted).

---

[1] This Firm was retained by Peak Source on March 23, 2018. Upon being retained, I emailed Shane Heskin, one of Plaintiffs' attorneys, requesting that Peak Source's time to answer or otherwise respond to the Amended Complaint be extended through and including April 13, 2018. Mr. Heskin consented to this request for an extension.



276 Fifth Avenue, Suite 404
New York, New York 10001
D: 646-794-1581 | O: 212-396-4288
F:  212-396-2617 | swoller@mmps.com

1981 Marcus Avenue, Suite E117
Lake Success, New York 11042

Here, the forum-selection clause is clear and unambiguous and provides that, *"[Plaintiffs] consent to the jurisdiction of the federal and state courts located in the State of Utah . . .* and agree that such courts *shall be the exclusive forum for all actions, proceedings or litigation arising out of or relating to this Agreement or subject matter thereof*[.]"  (ECF Doc. 13-1 at § 5.6.)  This clause clearly was communicated to Plaintiffs in the Agreement, which Plaintiffs signed, and, by its terms, is mandatory.  There also is little doubt that all of Plaintiffs' claims, at the very least, relate to the Agreement and are subject to the forum-selection clause.  Finally, while Plaintiffs challenge the validity of the Agreement as a whole as illegal or fraudulently induced, only a specific challenge to the forum-selection clause itself could potentially overcome the presumption of enforcement.  *See, e.g.*, *Id.* at 488 ("To challenge successfully a forum selection clause as void on the basis of illegality, the challenge must be directed against the forum selection clause itself, as opposed to the contract as a whole.")  Accordingly, this case must be dismissed or, alternatively, transferred to the District of Utah based on the Agreement's clear and mandatory forum-selection clause.

The Amended Complaint must also be dismissed under Rule 12(b)(6) because it fails to state a claim.  First, Plaintiffs' Civil RICO claim fails for a myriad of reasons, including but not limited to that it is based entirely on the faulty premise that Snap and Peak Source created an enterprise to collect upon unlawful loans.  But Plaintiffs' own allegations concede that this case does not involve a loan at all; rather, Snap provided Plaintiffs with a merchant cash advance.  The Appellate Division of the New York Supreme Court, First Department, recently confirmed that merchant cash advances are **not** loans and thus are **not** subject to New York's usury laws.  *Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*, 69 N.Y.S.3d 798 (Mem), 2018 N.Y. Slip Op. 01645 (N.Y. App. Div., Mar. 15, 2018).  This Court also has held that merchant cash advances are not loans subject to usury laws.  *Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 283 (S.D.N.Y. 2017).  Because the merchant cash advance is not a loan, Plaintiffs' Civil RICO claim—and indeed their entire case—crumbles.

Moreover, Plaintiffs have not alleged any facts supporting their bald assertion that Snap and Peak Source formed an "association-in-fact enterprise."  To establish the existence of such an enterprise, Plaintiffs, at the very least, must demonstrate a "common purpose" and "longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 298 (E.D.N.Y. 2017).  Plaintiffs allege that Snap and Peak Source were parties to "contracts and agreements," but allege no **facts** to support this allegation, and certainly offer "no basis for inferring that these two entities in isolation formed an ongoing organization, formal or informal, let alone a coherent entity separate and apart from the alleged fraudulent scheme."  *Id.* at 304 (citations, quotation marks, and alterations omitted).

Second, Plaintiffs' claim under New York General Business Law (GBL) § 349 also fails as a matter of law.  Even assuming Plaintiffs could bring a claim under New York law—the Agreement provides that Utah law applies—such a claim requires allegations that Peak Source



276 Fifth Avenue, Suite 404
New York, New York 10001
D: 646-794-1581 | O: 212-396-4288
F: 212-396-2617 | swoller@mmps.com

1981 Marcus Avenue, Suite E117
Lake Success, New York 11042

engaged in "consumer-oriented conduct" that is "materially misleading." *Violet Realty, Inc. v. Affiliated FM Ins. Co.*, 267 F. Supp. 3d 384 (W.D.N.Y. 2017). Plaintiffs cannot allege that Peak Source engaged in any misleading conduct. Nothing was misleading about the merchant cash advance transaction that Peak Source arranged with Snap. Plaintiffs knew they were obtaining a merchant cash advance and knew the terms. Further, as noted above, courts unanimously have confirmed that merchant cash advances are not loans. Moreover, Plaintiffs do not allege any consumer-oriented conduct. Rather, the only alleged conduct involves a contractual transaction between two business entities, which is not actionable under GBL § 349. *Id.* at 390 ("New York courts have recognized that private contract disputes between the parties do not fall within the ambit of [GBL § 349].")

Third, Plaintiffs' cannot maintain a fraud claim because, among other reasons, the only fraudulent representation alleged by Plaintiffs is that the merchant cash advance was, in reality, an illegal usurious loan. Again, however, merchant cash advances are not loans and not subject to usury laws. *Champion Auto Sales*, *supra*; *Colonial Funding, supra*.

Fourth, Plaintiffs' negligent misrepresentation claim must be dismissed. Negligent misrepresentation under Utah law requires, among other things, "a misrepresentation of material fact." *Olsen v. Univ. of Phoenix*, 244 P.3d 388, 390 (Utah 2010). The only alleged misrepresentation alleged against Peak Source in support of this claim is a statement from Peak Source's website that it employs "experts" whose "goal is to provide your business with the finances to reach the next level of growth." Not only is this statement immaterial to Plaintiffs' decision to enter into the Agreement with Snap, it is not a "fact" at all. Rather, the statement is an opinion that cannot be proven true or false.[2] *See, e.g.*, *Von Turkovich v. APC Capital Partners, LLC*, 259 F. Supp. 2d 314, 321 (D. Vt. 2003) (statement that loan modifications "would accomplish Plaintiffs' goals, is not a statement of existing fact but an opinion offered by [defendant] . . . [and] cannot be the basis for an action of fraud").[3]

For these reasons, Peak Source respectfully requests permission to move to dismiss or transfer this case.

---

[2] This claim would fail under New York law for the same reason and additionally because Plaintiffs do not, and cannot, allege the "existence of a special or privity-like relationship" between Plaintiffs and Peak Source, a necessary element of a negligent misrepresentation claim in New York. *CSI Grp., LLP v. Harper*, 61 N.Y.S.3d 592, 597 (N.Y. App. Div. 2017) (no fiduciary or special relationship, and thus no negligent misrepresentation, between parties to an arm's length commercial transaction).

[3] Plaintiffs' last claim is for an alleged violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act"), 815 ILCS 505/1, *et seq*. But even assuming Plaintiffs can assert a claim under Illinois law (which they cannot), this claim fails because, among other reasons, Plaintiffs are not "consumers" as defined in the Act. *See Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004); 815 ILCS 505/1(e).



276 Fifth Avenue, Suite 404  
New York, New York 10001  
D: 646-794-1581 | O: 212-396-4288  
F:  212-396-2617 | swoller@mmps.com  

1981 Marcus Avenue, Suite E117  
Lake Success, New York 11042  

                                  Respectfully Submitted,

                                  /s/*Scott D. Woller*  
                                Scott D. Woller

cc: All Counsel of Record (via ECF and email)